UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOSEPH FLEMING | ) |
| Plaintiff | ) |
| v. | ) |
| UNITED RECEIVABLES GROUP, LLC | ) |
| Defendant | ) |

**COMPLAINT AND REQUEST FOR JURY TRIAL**

**I.     INTRODUCTION**

1. This is an action for actual and statutory damages brought by Joseph Fleming against United Receivables Group, LLC for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (hereinafter ''FDCPA''), and the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. §11001 *et seq*., which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices.

**II.     JURISDICATION AND VENUE**

2. This Court has subject matter jurisdiction over this matter pursuant to 4 M.R.S.A. § 105(1).

3. Venue is appropriate inasmuch as URG is a resident of Androscoggin County. Venue is also proper in this Court because the Defendant systematically and continuously transacts business in this county and State and the causes of action set forth in this Complaint, in part, arose in this county.

1

### III.   PARTIES

4. Plaintiff Joseph Fleming is a natural person residing in Auburn, Maine;

5. Defendant, United Receivables Group, LLC ("URG") is a limited liability corporation organized under the laws of South Carolina, with a principal place of business in South Carolina.

6. URG is purportedly the collector of debt that Joseph Fleming originally owed to Rent A Center (hereinafter "RAC").

7. URG acquired the debt from RAC on or about April 1, 2011.

8. URG regularly engages in the business of collecting debts in this state and uses both the mail the telephone to collect such debts.

9. Based on information and belief the principal purpose of URG is the collection of debts using the mails, internet, and telephone, and URG regularly attempts to collect debts alleged to be due another and purchased by URG after default.

10. Accordingly, URG is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a (6), 32 M.R.S.A. §11002(6) and 11003(7) (C).

### IV. FACTS

1. Mr. Fleming repeats, realleges, and incorporates by reference Paragraphs 1 through 10 of this complaint.

2. In 2008, Mr. Joseph Fleming purchased from RAC through a rent to own plan a refrigerator and sofa.

3. In July 2010, Mr. Fleming lost his job and was unable to continue to make payments on the rent to own agreement with RAC.

4. Mr. Fleming did have unemployment credit insurance on his RAC account however; the claim did not cover the full amount of the agreements with RAC.

5. In January 2014, URG called Mr. Fleming's father, Joseph Fleming, who lived at that time in New Hampshire and demanded to know his son's address and phone number.

6. When Mr. Fleming's father refused to provide the information without first contacting his son, the URG representative threatened to take Mr. Fleming's father to court and to subpoena him.

7. The URG representative disclosed that Mr. Fleming owed money to RAC, the approximate amount of the debt, and that they were collecting the unpaid amounts.

8. The URG representative also advised Mr. Fleming's father that they did not care how Mr. Fleming raised the money, including whether he borrowed the money from family, but they would take his son to court if his son did not pay them the money he owed to RAC.

9. Mr. Fleming's father then contacted his son to tell him about the call.

10. Mr. Fleming then contacted URG soon after using the number his father provided.

11. The URG representative Mr. Fleming spoke with warned Mr. Fleming that if he did not immediately pay the amount owed, URG would arrange for an arrest warrant to be issued for Mr. Fleming and have Mr. Fleming arrested.

12. Mr. Fleming discontinued the call and called RAC to determine if URG was authorized to collect the debt he owed and RAC represented that URG bought the debt.

13. Fearful of being arrested, Mr. Fleming called URG back.

14. Mr. Fleming entered into an agreement to make payments on the amount owed for the refrigerator in the amount of $900.00.

15. He agreed to pay a lump sum of $450.00 and two further payments of $225.00.

16. Mr. Fleming provided a debit card for payment and authorized only the payment of $900 in the installments agreed to by phone.

17. Mr. Fleming did not agree to repay the amounts owed on any other debt and did not authorize any other payment from his debit card.

18. Mr. Fleming's sole source of income at the time was unemployment benefits.

19. URG then withdrew a payment of $450.00 from Mr. Fleming's debit card on January 18, 2014.

20. URG then withdrew a payment of $225.00 from Mr. Fleming's debit card on February 1, 2014.

21. URG then withdrew a payment of $225.00 from Mr. Fleming's debit card on February 8, 2014.

22. Without authorization and without agreement, URG then withdrew $1500.00 from Mr. Fleming's debit account on February 21, 2014.

23. Mr. Fleming called URG and complained that they had withdrawn the $1500.00 without authorization and without advance notice and in violation of his instructions. Mr. Fleming demanded that the $1500 be returned to him.

24. URG refused to refund the $1500 and retained the full amount.

25. URG sent to Mr. Fleming a letter as confirmation of the payment made on January 18, 2014.

26. The letter was the first written correspondence Mr. Fleming received from URG.

27. The letter received from URG did not advise Mr. Fleming of his right to send a written dispute to URG or of his right to receive verification of the debt or copy of any judgment.

28. Mr. Fleming first learned that URG withdrew $1500 from his debit card when he attempted to purchase a vehicle on the same day and the down payment on a vehicle was rejected for insufficient funds.

29. Mr. Fleming was without an operating vehicle and as a result incurred the cost and expense of renting a vehicle in order to travel to work since he could no longer afford to buy a vehicle after URG made the unauthorized debit of $1500.00.

30. Mr. Fleming paid several hundred dollars in car rental fees.

31. URG is not licensed in the State of Maine as a debt collector.

## COUNT I

**Violation 32 M.R.S. §11001 et. seq.: Maine Fair Debt Collection Practices Act**

32. Mr. Fleming repeats and realleges and incorporates by reference all paragraphs above.

33. URG's actions in this case constitute violations of the Maine Fair Debt Collection Practices Act (Maine FDCPA), 32 M.R.S. § 11001 et. seq. specifically but not limited to: URG's violations include, but are not limited to, the following:

   a) URG violated 32 M.R.S. § 11013-A when it failed to provide Mr. Fleming with a written validation notice within 5 days of its first communication with Mr. Fleming;

   b) URG violated 32 M.R.S. §§ 11012(2) and 11011(B) when it contacted Mr. Fleming's father for reasons other than acquiring Mr. Fleming's location information and disclosed to Mr. Fleming's father that Mr. Fleming owed a debt and the approximate amount of that debt, and further advised that they did not care how Mr. Fleming paid the debt and that he could borrow the money to pay the debt.

    c) URG further violated 32 M.R.S. §§ 11013(2)(E) and (3)(N) when it threatened to subpoena Mr. Fleming's father to court and make him disclose the location of his son even though no case was pending and URG is not an attorney or law office;

    d) URG violated 32 M.R.S. §§ 11013(2)(D), (E), and (G) when it threatened to have an arrest warrant issued and have Mr. Fleming arrested if he did not pay the debt they alleged he owed;

    e) URG violated 32 M.R.S. §11013 including but not limited to subsections 11013(2)(J), (3) and §11015, by using unfair or unconscionable means to collect or attempt to collect on the debt when it took from Mr. Fleming's debit account an unauthorized payment for a second debt it alleged Mr. Fleming owed and by taking payments that were applied to other debt inconsistent with of Mr. Fleming's directions.

    f) URG violated 32 M.R.S. §11018 by engaging in debt collection activities without first obtaining a license.

34. Mr. Fleming suffered actual damages as a result of Plaintiff's conduct by loss of an opportunity to obtain credit and/or purchase a vehicle and thereafter being forced to rent a vehicle.

35. URG's acts as described above were done intentionally with the purpose of coercing Mr. Fleming to pay the alleged debt.

36. As a result of URG's actions, Mr. Fleming believed that URG could cause him to be arrested and that caused Mr. Fleming anxiety, distress and fear of being arrested and he worried about how long he would be in jail since he feared he did not have the money to get himself out. He felt panicked and fearful.

37. He also worried and feared that his opportunity to get work would be harmed. At that time he hoped to obtain work as a security guard for a private security company.

38. As a result of the above violations of the FDCPA, URG is liable to Mr. Fleming for declaratory judgment that URG's conduct violated the FDCPA; Mr. Fleming's actual damages, which include damages for emotional distress;  and statutory damages plus costs and attorney's fees and for such other and further relief as may be just and proper.

## COUNT II

### Violation 15 USC §1692 et. seq.: Fair Debt Collection Practices Act

39. Mr. Fleming repeats and realleges and incorporates by reference all paragraphs above.

40. URG violated 15 USC §1692 et seq.: Fair Debt Collection Practices Act (FDCPA).

41. URG's violations include, but are not limited to, the following:

   g) URG violated 15 USC §1692g when it failed to provide Mr. Fleming with a written validation notice within 5 days of its first communication with Mr. Fleming;

   h) URG violated 15 USC §1692b, §1692c and 1692e (10) when it contacted Mr. Fleming's father for reasons other than acquiring Mr. Fleming's location information and disclosed to Mr. Fleming's father that Mr. Fleming owed a debt and the approximate amount of that debt, and further advised that they did not care how Mr. Fleming paid the debt and could borrow the money to pay the debt.

   i) URG further violated 15 USC §1692b and §1692c and §1692e(5) when it threatened to subpoena Mr. Fleming's father to court and make him disclose the location of his son even though no case was pending;

j) URG violated 15 USC §§1692e(4), (5),(7), (10) and §1692f when it threatened to have an arrest warrant issued and have Mr. Fleming arrested if he did not pay the debt they alleged he owed;

k) URG violated 15 USC §§1692f and §1692h by using unfair or unconscionable means to collect or attempt to collect on the debt when it took from Mr. Fleming's account an unauthorized payment for a second debt it alleged Mr. Fleming owed and by taking payments that were applied to debt in violation of Mr. Fleming's directions.

42. Mr. Fleming suffered actual damages as a result of URG's conduct by loss of the opportunity to obtain credit and/or purchase a vehicle and thereafter being force to rent a vehicle.

43. As set forth above, as a result of URG's actions, Mr. Fleming believed that URG could cause him to be arrested and that caused Mr. Fleming anxiety, distress and fear of being arrested and he worried about how long he would be in jail since he feared he did not have the money to get himself out. He felt panicked and fearful.

44. Mr. Fleming also worried and feared that his opportunity to get work would be harmed. At that time he hoped to obtain work as a security guard for a private security company.

45. URG's acts as described above were done intentionally with the purpose of coercing Mr. Fleming to pay the alleged debt.

46. As a result of the above violations of the FDCPA, URG is liable to Mr. Fleming for declaratory judgment that URG's conduct violated the FDCPA; Mr. Fleming's actual damages, which include damages for emotional distress; and statutory damages plus costs and attorney's fees and for such other and further relief as may be just and proper.

WHEREFORE, Mr. Fleming prays that the court find that URG violated the Maine FDCPA and the FDCPA, award Mr. Fleming's actual damages; which includes emotional distress, statutory damages, costs and attorneys fees and such other relief as may be just and proper.

## COUNT III

### Conversion.

47. Mr. Fleming repeats and realleges and incorporates by reference all paragraphs above.

48. URG, without authorization, electronically entered into Mr. Fleming's debit card account and withdrew $1500.00.

49. Mr. Fleming immediately called URG when he learned that the money had been seized by URG without authorization and demanded URG return the money.

50. URG refused to return the funds and retained all of the $1500.00.

51. URG did not earn the $1500.00; had not provided services or goods in exchange for $1500.00; had not obtained a court judgment for $1500.00; and otherwise had not established any legal right to collect $1500.00 from Mr. Fleming without Mr. Fleming's personal authorization.

52. At that same time that URG seized the $1500.00 belonging to Mr. Fleming from Mr. Fleming's bank account, Mr. Fleming had been shopping for a vehicle because his car was in disrepair.

53. As a result of URG's unauthorized taking of the $1500 from Mr. Fleming's bank account, Mr. Fleming was unable to enter into a purchase and sale agreement for the purchase of a vehicle.

54. As a result, Mr. Fleming was forced to rent a vehicle and incur rental expenses.

WHEREFORE, Mr. Fleming is entitled to the return of the $1500.00 plus any additional consequential damages, actual damages and costs, together with emotional and punitive damages and such other relief as this court deems just.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands trial by jury in this action.

RESPECTFULLY SUBMITTED,

Date: January 6, 2015   /s/ Chet Randall_____
Chet Randall, Esq., Bar # 9152
Molleur Law Office
419 Alfred St.
Biddeford, ME 04005
207-283-3777
Chet@Molleurlaw.com